UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **GREGORY STEWART and NICOLE STEWART** | **CIVIL ACTION** |
| **VERSUS** | **NO:  06-09884** |
| **AMERICAN FAMILY MUTUAL INSURANCE CO. and CANDICE SCHULTZ** | **SECTION: "R" (4)** |

**ORDER**

Before the Court is a **Motion to Quash (R. Doc. 57)**, filed by the Plaintiffs, Gregory and Nicole Stewart, seeking an order from the Court quashing a subpoena issued by the Defendants. In response, the Defendants filed a Memorandum in Opposition to Motion to Quash Deposition (R. Doc. 60). Thereafter, the Plaintiffs filed a Reply Memorandum in Support of Motion to Quash Deposition of Blue Cross Blue Shield (R. Doc. 66) and Blue Cross and Blue Shield of Louisiana ("Blue Cross") filed an interrelated motion to quash the Defendants' subpoenas (R. Doc. 64). However, Blue Cross's motion was terminated by the Clerk of Court because of filing deficiencies. The Plaintiffs' motion was heard with oral argument on January 23, 2008.

**I.    Background**

This action arises from a car accident that occurred on or about October 25, 2005. (R. Doc. 1, p. 5.) On October 25, 2005, Gregory Stewart ("Stewart") was driving his 1996 Lincoln Town Car when Candace Schultz ("Schultz") drove a vehicle past an adjacent stop sign into Stewart's path. Stewart purportedly suffered multiple bodily injuries from his head to his right knee from the resulting vehicular accident. (R. Doc. 1.) Stewart brings the subject action, claiming damages

arising from Schultz's negligence in operating the vehicle and for mental anguish, pain and suffering, and medical expenses. (R. Doc. 1.) Stewart's spouse, Nicole Stewart, also brings claims against the Defendants for loss of consortium, society, and other marital benefits that she lost as a result of her husband's accident. (R. Doc. 1.) American Family Mutual Insurance Co. insured Schultz at the time of the accident. (R. Doc. 2.)

In connection with the matter, the Defendants noticed a deposition of Stewart's health care provider, Blue Cross on January 28, 2008 at 10:30 a.m. (R. Doc. 57-3, Ex, 1 p. 4.) In the subpoena, the Defendants request Blue Cross to testify and provide various financial documents and schedules regarding the amounts billed in connection with Stewart's injuries.

The Plaintiffs bring the subject motion, requesting that the subpoena be quashed. Specifically, the Plaintiffs contend that the information requested by the subpoena is (1) irrelevant, (2) will not lead to discoverable evidence, and (3) is inadmissible under the collateral source rule.

In opposition, the Defendants contend that the parties did not confer in a Local Rule 37.1E conference prior to the filing of the motion and therefore the Plaintiff's motion is procedurally defective. Additionally, the Defendants contend that it is not seeking the requested information from Blue Cross to offset its potential liability as prohibited by the collateral source rule, but rather, it seeks such information to determine the actual damages suffered in the case.

**II.     Standard of Review**

Federal Rule of Civil Procedure ("Rule") 26(b)(1) provides that "[p]arties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." The Rules specify that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). The

discovery rules are accorded a broad and liberal treatment to achieve their purpose of adequately informing litigants in civil trials. Hebert v. Lando, 441 U.S. 153, 176 (1979). Nevertheless, discovery does have "ultimate and necessary boundaries." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (quoting Hickman v. Taylor, 329 U.S. 495, 507 (1947)). Furthermore, "it is well established that the scope of discovery is within the sound discretion of the trial court." Coleman v. American Red Cross, 23 F.3d 1091, 1096 (6th Cir.1994).

### A. Subpoena Power

The Rules also enumerate the subpoena authority of the Court. Subsection (a)(2)(B) of Rule 45 provides that a subpoena "for attendance at a deposition" must issue "from the court for the district where the deposition is to be taken." Additionally, a subpoena "for production, inspection, copying, testing, or sampling," must also issue "from the court, for the district where the production or inspection is to be made." Fed. R. Civ. P. 45(a)(2)(C).

### B. Collateral Source Rule

In a diversity matter, the Court looks to the Louisiana law regarding the collateral source rule, which is both a rule of evidence and of damages. Kadlec Medical Center v. Lakeview Anethesia Asosciates, No. 04-0997, 2006 WL 897223, at *2 (E.D. La. Mar. 14, 2006). The evidentiary collateral source rule "bars the introduction of evidence that a plaintiff has received benefits or payments from a collateral source independent of the tortfeasor's procuration or contribution." Bozeman v. Louisiana, 879 So. 2d 692, 699 (La. 2004). Under the rule, evidence of payments received by the plaintiff from an independent source, such as a insurance company is inadmissible to reduce "the award the aggrieved party would otherwise receive from the wrongdoer." Johnston v. Shelton, 961 So.2d 582, 587 (La. App. 2 Cir. 2007). However, while a tortfeasor may not

3

introduce evidence regarding benefits or payments received by the plaintiff, if the tortfeasor seeks to introduce such evidence to impeach the credibility of the plaintiff, then the collateral source rule is inapplicable. *Dumas v. Harry*, 638 So. 2d 283, 286 (La. App. 5 Cir. 1994).

Courts espouse various public policy motivations for the collateral source rule, including (1) tort deterrence and (2) accident prevention. *Id.* Courts primarily indicate that "the defendant should not gain an advantage from outside benefits provided to the plaintiff independently of any act of the defendant." *Id.* Furthermore, "absent the collateral source rule, injured parties would be discouraged from purchasing insurance or pursuing other forms of reimbursement available to them." *Id.*

### III. Analysis

The Plaintiffs bring the subject motion to quash the Defendants' subpoena of Blue Cross, contending that the Defendants are seeking evidence of Stewart's health insurance that is inadmissible under the collateral source rule. The Plaintiffs argue that the requested health insurance information will not lead to discoverable evidence and is irrelevant. The Plaintiffs also argue that if the Defendants seek information regarding the "reasonableness" of the medical bills, the Defendants should directly seek discovery from the health care provider, Kenner Regional Medical Center ("Kenner Medical") as opposed to the Plaintiff's health insurance provider, Blue Cross. They also note that the Defendants cannot seek information regarding the "reasonableness" of the medical expenses in an attempt to circumvent the collateral source rule.

In opposition, the Defendants contend that their subpoena should not be quashed because the Plaintiffs' motion is procedurally defective. The Plaintiffs failed to attach a certificate as required by Local Rule 37.1E. Additionally, the Defendants argue that they are entitled to discover the billing information from Blue Cross, as the information is reasonably calculated to the discovery of

admissible evidence, even if the information itself is not admissible at trial.  Specifically, the Defendants seek to question why the Plaintiffs are requesting recovery for the full $58,638.76 amount of Stewart's medical bill and why Kenner Medical accepted $4,492.00 (which included Blue Cross payment of $3,950.76 and Stewart's co-payment of $541.24) in full satisfaction of the outstanding bill.  While the Defendants admit that the collateral source rule prohibits the tortfeasor from benefitting from a plaintiff's self-purchased insurance, they assert that the Rule does not prevent the tortfeasor from questioning the reasonableness of or finding other bases for attacking the medical billing.  In defense of their position, they cite to Louisiana law provides that a health care provider may only charge the Plaintiff for reasonable medical expenses.  La. Rev. Stat. § 9:4752.

The Plaintiffs counterargue that the Defendants cannot "mention" that Stewart had health insurance, nor can the Defendants address the amount ultimately paid by Blue Cross to partially satisfy Kenner Medical's bill.  The Plaintiffs also assert that La. Rev. Stat. § 9:4752 pertains to the privilege of health care providers, is therefore inapplicable to the case here.

Additionally, Blue Cross also appeared at the hearing and advanced arguments on its own behalf. Blue Cross contends that the Defendants' subpoena request (1) implicates the privacy rights of the patients, (2) requests highly confidential and sensitive information relating to Blue Cross's business model, and (3) is burdensome and harassing because of the wide-reaching request for information on similar health care providers in the Greater New Orleans area.  Blue Cross also asserts that it already provided invoices to both counsel that itemizes the (1) total billed expenses, (2) the payments, and (3) the financial responsibility of the patient.  According to Blue Cross, payments made to health providers are made according to a fixed fee schedule and Blue Cross "does not discriminate" amongst providers or deviate from the schedule, regardless of the bill amount.

At the hearing, the Court asked counsel for the Defendants to identify any cases where a court permitted the discovery of evidence regarding the "reasonableness" of information that would be inadmissible at trial. However, counsel admitted to not finding any such case law. Accordingly, in light of the parties' arguments, the Court proceeds with its analysis below.

### A.   **Certificate of Counsel**

Local Rule 37.1E provides that "[n]o motion relative to discovery shall be accepted for filing unless accompanied by a certificate of counsel for the moving party stating that counsel have conferred in person or by telephone for purposes of amicably resolving the issues and stating why they are unable to agree or stating that opposing counsel has refused to so confer after reasonable notice." L.R. 37.1E.

Here, the Court notes that the Plaintiffs did not file a Local Rule 37.1E certificate with their motion to quash, indicating that the parties conferred before the filing of the subject motion. Therefore, the Court concludes that the Plaintiffs' motion is procedurally deficient under Local Rule 37.1E. However, though the Plaintiffs did not attach a certificate, the Defendants reply brief indicates that the parties did confer telephonically and discussed the issues and law giving rise to the subject motion. In fact, the back and forth exchange of filings–the Defendants' reply to the Plaintiffs' motion and the Plaintiffs' subsequent counter-reply–indicates that the issue of the subject motion remains and that the parties cannot resolve their dispute without the Court's involvement. Furthermore, the Court considered the Plaintiffs' motion on an expedited basis because the Court identified a valid controversy between the parties that required judicial intervention. Finally, at the hearing on the motion, the parties agreed to waive any objections regarding the Local Rule 37.1E procedural deficiency with this subpoena request. Therefore, the Court exercises its discretion to

manage discovery and determines that while the Plaintiffs' motion suffers from this procedural defect, it was effectively cured in the parties' subsequent filings. Therefore, the Court proceeds to analyze the Plaintiffs' motion on the merits.

### B.    Subpoena

The Court also notes that the Defendants' subpoena is procedurally deficient under Rule 45. As indicated above, Rule 45(a)(2)(B) provides that a subpoena must issue "from the court for the district where the deposition is to be taken." Analogously, Rule 45(a)(2)(C) provides that a subpoena must issue "from the court, for the district where the production or inspection" of the requested documents is to be made. Here, the Defendants request that the Plaintiffs (1) appear for a deposition and (2) produce and permit the inspection and copying of various documents in Baton Rouge, Louisiana, a location in the Middle District of Louisiana. (R. Doc. 57-3, Ex. 1, p. 4.)

However, the subpoena was issued by the United States District Court of the Eastern District of Louisiana. (R. Doc. 57-3, Ex. 1, p. 4.) Consequently, based on Rule 45, the subpoena is procedurally defective because the subpoena was not issued by the court for the district where the production and inspection of the documents and where the deposition is to be held. Nevertheless, the Court proceeds to the substance of the motion because the parties agreed to waive any objections regarding the procedural deficiencies of the subpoena.

### C.    Collateral Source Rule

The Supreme Court of Louisiana spoke to the applicability of the collateral source rule to "write-offs" in *Bozeman v. Louisiana*, 879 So. 2d 692 (La. 2004), or amounts forgiven or discounted by the medical provider. The plaintiff in *Bozeman* was seriously injured on a dangerous roadway. *Id.* at 693. The plaintiff applied for and was granted Medicaid benefits for his injuries and

7

subsequently, was awarded medical benefits in the ensuing litigation. *Id.* A portion of his medical expenses were "written off" in accordance with Medicaid program requirements. *Id.* at 694-95. The tortfeasor sought to reduce the amount of its liability by the amount "written off" for the Plaintiff's participation in the Medicaid program. *Id.*

The Louisiana Supreme Court held that the collateral source rule prohibits the tortfeasor from benefitting from "write-offs" by the medical provider, if the plaintiff has paid some consideration for the benefit of the "written off" amounts. *Id*. at 704; *see Melancon v. Lafayette Ins. Co., 926 So. 2d 693, 702 (La. App. 3 Cir. 2006)* (affirming the trial court's refusal to allow the introduction of evidence that the medical expenses actually paid were less than the amounts on the medical bills). The Court further reasoned that while the collateral source rule prohibits the tortfeasor from using a "write-off" as evidence to limit the recovery of a self-insured plaintiff, a tortfeasor may introduce evidence and offset its liability with amounts paid by the federal Medicare program, a program funded by taxpayers and not the beneficiaries. *Id.* at 704.

Here, the Plaintiff was self-insured through Blue Cross and thus paid consideration for his insurance coverage, unlike the Medicare insurance which is financed by taxpayers through compulsory income tax. Therefore, under the reasoning of *Bozeman*, the requested evidence from Blue Cross regarding the "write off" would constitute inadmissible evidence because the trier of fact may not consider payments or write-offs made by Blue Cross, a collateral source.

The collateral source rule is an evidentiary rule and not a discovery rule. As indicated above, Federal Rules are liberal and allow the discovery of information that may ultimately be inadmissible at trial, provided that the discovery is reasonably calculated to lead to admissible evidence. The Defendants' requested discovery regarding the "reasonableness" of the medical bills is not

reasonably calculated to lead to admissible evidence because any write-off by Kenner Medical to Blue Cross and the Plaintiffs is inadmissible to minimize the award due to the Plaintiffs.

The Defendants attempt to distinguish *Bozeman* because it involves to a Medicaid beneficiary and the monetary discrepancy between the actual amount billed to Stewart and the amount accepted by Kenner Medical is at a far greater ratio than the "two-to-one" ratio in *Bozeman*. While *Bozeman* specifically addressed Medicaid write-offs, the Court concludes that *Bozeman* has widespread applicability to the collateral source rule generally. Although the facts of *Bozeman* involved a Medicaid recipient, the *Bozeman* Court concurrently held that tort victims who contribute consideration to secure collateral source benefits are protected by the collateral source rule, as the policy goal behind the collateral source rule is to encourage the foresight to purchase insurance. *Id.* at 704. Therefore, *Bozeman* is applicable to the facts here.

Finally, the Court finds that the Louisiana law cited by the Defendants regarding the reasonableness of medical expenses to be unavailing here. La. Rev. Stat. § 9:4752. As the Plaintiffs argued, the law provides a privilege to medical providers, to ensure that they paid reasonable fees for their services. *Id.* The law does not serve as a limitation against medical provider, such they may only bill reasonable medical expenses to tortfeasors. In fact, the Defendants' contention that La. Rev. Stat. § 9:4752 may be used to protect the tortfeasor against unreasonable medical expenses is contradicted by the holding in *Bozeman,* which summarizes extensive case law holding that tortfeasors cannot benefit from any reductions from write-offs or collateral payments, even if such additional payments would result in a double recovery for the injured plaintiff. Therefore, case law belies the Defendants' contention that an unrelated law should be construed to the Defendants'

9

benefit, when the law and policy behind the collateral source rule indicates that a court's focus should be on the victim's damages and not the tortfeasor's damages.

In sum, the Court concludes that the Defendants' subpoena request will not likely lead to the discovery of admissible evidence, because the collateral source rule prohibits the admissibility of the evidence.

### IV.   Conclusion

Accordingly,

The Plaintiff's **Motion to Quash (R. Doc. 57)** is **GRANTED**.

New Orleans, Louisiana, this ___12th___ day of February 2008

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**